**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2797
_____

WILLIAM PAPA ZOOMIE,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(A079-821-070)
Immigration Judge: Honorable Walter A. Durling

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 10, 2011
Before:  CHAGARES, VANASKIE and STAPLETON, Circuit Judges

(Opinion filed: November 21, 2011)
_____

OPINION
_____

PER CURIAM.

William Papa Zoomie, a native and citizen of Liberia, petitions for review of a

final removal order in which the Board of Immigration Appeals ("BIA") affirmed the

denial of Zoomie's application to defer his removal under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition for review.

I.

Zoomie, presently age thirty, was admitted to the United States in 2001 as a refugee. In 2004, he was convicted in a Pennsylvania state court of rape, aggravated indecent assault, and other offenses. The trial court sentenced Zoomie to an aggregate of five to ten years in prison. Zoomie's conviction and sentence were affirmed on appeal, and he currently remains incarcerated in a Pennsylvania correctional institution.

In 2007, Zoomie applied to adjust his status to lawful permanent resident and sought a waiver of his excludability from the United States. His application was denied. The Department of Homeland Security then charged Zoomie as removable for, inter alia, having committed a crime involving moral turpitude, 8 U.S.C. § 1182(a)(2)(A)(i)(I). Zoomie elected to proceed pro se before an Immigration Judge ("IJ"), and he conceded removability as charged. Zoomie renewed his application to adjust status and waive excludability, and he sought a deferral of removal under the CAT due to a claimed fear that he likely will be tortured or killed in Liberia.

Zoomie testified that his father was a district governor in the administration of former Liberian President Samuel K. Doe. In 1990, when Zoomie was age nine, anti-Doe rebels supporting future President Charles Taylor entered Zoomie's hometown. Zoomie, his mother, and his grandmother fled their home but were stopped at a roadblock

2

controlled by rebels, who inquired as to the whereabouts of Zoomie's father. Dissatisfied with the answers they received, the rebels beheaded Zoomie's grandmother. In addition, they beat Zoomie's mother and stabbed her in the foot with a knife, and they beat Zoomie and hit him in the face with a gun, breaking his teeth. Zoomie and his mother (and his father separately) managed to escape, crossing the border into Sierra Leone where they remained in a refugee camp. The family relocated to a refugee camp in Ghana in 1995 before being admitted to the United States in 2001.

In 2003, after the civil conflict in Liberia had ended, Zoomie's father returned to the country. Zoomie contends that his father was arrested and killed approximately three months after returning, allegedly by former rebels acting under the direction of Prince Johnson, who was general in Charles Taylor's army and is now a senator in the current Liberian government. Zoomie claims that his father was killed due to lingering animosity over his role in the Doe government and to prevent him from reclaiming family property. Zoomie fears that he will meet the same fate in Liberia because, he contends, the animosity held by former anti-Doe rebels toward his father extends to him, and the former rebels now hold positions in the current government.

The IJ denied Zoomie's applications for relief in February 2009, and Zoomie appealed. The BIA summarily remanded the case because a recording of the merits hearing and the IJ's oral decision could not be located. After conducting a de novo merits hearing on November 24, 2009, the IJ issued an oral decision again denying all

3

relief. With regard to the CAT claim, the IJ found no support for Zoomie's contention that he will be tortured or killed by individuals associated with the current Liberian government due to his family's past affiliation with the Doe regime.

The BIA dismissed Zoomie's appeal. It concluded that the IJ's factual determination regarding what is likely to happen to Zoomie upon his return to Liberia is not clearly erroneous. The BIA observed that the past harm to Zoomie and his family occurred long ago, that Zoomie himself never served in the Doe government, and that the background materials do not reflect that the current Liberian government targets family members of people who served in previous governments. The BIA also found that Zoomie did not establish that any torture would be inflicted by or at the instigation of or with the consent or acquiescence of a public official, noting that the 2007 and 2008 State Department Country Reports reflect that Liberia is now a constitutional democracy that generally respects the human rights of its citizens. The BIA noted that there are no reports that the government or its agents have committed arbitrary or unlawful killings, and it observed that the government continues to promote its Truth and Reconciliation Commission following the end of the civil war in 2003. The BIA concluded that Zoomie failed to show that it is more likely than not that he will be subjected to harm in Liberia amounting to torture. Zoomie timely filed a pro se petition for review in this Court.

## II.

Given Zoomie's criminal conviction, our jurisdiction over his petition for review

4

is limited to addressing constitutional claims or questions of law. See 8 U.S.C. §
1252(a)(2)(D); Papageorgiou v. Gonzales, 413 F.3d 356, 358 (3d Cir. 2005). Zoomie
does not contest that he is removable from the United States for committing a crime
involving moral turpitude, and thus we do not review that determination. Zoomie's sole
challenge is to the agency's refusal to afford CAT protection. In particular, he argues at
length in his brief that the evidence supports his claim that he is likely to be tortured or
killed in Liberia by the same forces who killed his father, and he contends that the IJ and
the BIA erred in failing to agree with him. Respondent argues that we lack jurisdiction
because Zoomie does not raise a colorable constitutional claim or question of law.

We agree with respondent that we are without power to review Zoomie's
challenge to the finding about what is likely to happen to him in Liberia. As the BIA
noted, the relevant inquiry under the CAT consists of both a factual component ("what is
likely to happen to the petitioner if removed") and a legal component ("does what is
likely to happen amount to the legal definition of torture"). Kaplun v. Att'y Gen., 602
F.3d 260, 271 (3d Cir. 2010). By virtue of 8 U.S.C. § 1252(a)(2)(D), the agency's factual
finding or prediction as to the likelihood that Zoomie will be tortured in Liberia is beyond
the scope of our jurisdiction, and thus we do not address that issue further.

To the extent that Zoomie's pro se brief can be read to argue that the agency failed
to consider all evidence of record regarding the likelihood that he will be tortured, we
retain jurisdiction to review that question of law, but find no support for the argument.

5

The decisions of both the IJ and the BIA reflect full consideration of the evidence presented, including not only the background materials reflecting country conditions but also Zoomie's testimony and the statements that Zoomie obtained from David Togbah and Pastor James Dennis, two friends of the Zoomie family who claim that Zoomie faces grave danger in Liberia. The BIA weighed this evidence and agreed with the IJ that, "even assuming the veracity of the letters from two Liberian friends of [Zoomie]'s family regarding the risks and threats [Zoomie] himself may face in returning to Liberia, the background materials do not reflect that the current Liberian government targets family members of people who served in previous governments." A.R. at 4.

Zoomie suggest that the BIA failed to consider that he suffered torture in Liberia as a child, and he argues that the BIA erred because "if it happen[ed] before, it could happen again." Reply Br. at 3; see Opening Br. at 21-22. Under the CAT, "a petitioner is not entitled to a presumption of future torture based on evidence of past torture; nor does a showing of past torture automatically render [him] CAT eligible." Niang v. Gonzales, 422 F.3d 1187, 1202 (10th Cir. 2005); see also Ramsameachire v. Ashcroft, 357 F.3d 169, 185 (2d Cir. 2004) ("A CAT claim focuses solely on the likelihood that the alien will be tortured if returned to his or her home country, regardless of the alien's subjective fears of persecution or his or her past experiences."). Evidence of past torture is but one relevant factor when assessing the likelihood of future torture. See 8 C.F.R. § 1208.16(c)(3). Here, the IJ and the BIA acknowledged Zoomie's horrible experience as a

6

child in Liberia, they considered the other relevant evidence of record, and ultimately they concluded that current conditions do not suggest a likelihood that Zoomie will be tortured. Zoomie has not shown that the agency overlooked any of the evidence before it.

Zoomie next argues that the BIA erred as a matter of law by failing to acknowledge that the IJ did not make an adverse credibility determination, and Zoomie suggests that, because the government did not file a brief before the BIA, his testimony alone sufficed to establish eligibility for CAT relief. See Opening Br. at 23. The record reflects that the government moved for summary affirmance before the BIA, and it did not waive its right to challenge Zoomie's testimony as insufficient. Furthermore, a CAT claim must be supported by objective evidence showing a likelihood of torture, including evidence of past torture, "gross, flagrant or mass violations of human rights," and "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. §§ 208.16(c)(3); see Kaita v. Att'y Gen., 522 F.3d 288, 300 (3d Cir. 2008). Here, the BIA properly looked to the objective evidence of record beyond Zoomie's credible testimony when assessing the prevailing conditions in Liberia.

Finally, Zoomie contends that the BIA erred by failing to address his claim that he will be *persecuted* in Liberia due to membership in a particular social group consisting of his family. The sole issue, however, is whether Zoomie faces a likelihood of *torture*, not persecution. In addition, membership in a particular social group is not relevant under the CAT. See, e.g., Ambartsoumian v. Ashcroft, 388 F.3d 85, 89 (3d Cir. 2004)

7

(observing that "[t]he standard for CAT protection ... does not require any showing that the torture is on account of any protected ground").

III.

For the foregoing reasons, we will deny the petition for review.